FILED by _____ KS _____ D.C.

**Apr 14, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **22-80054-CR-MIDDLEBROOKS/MATTHEWMAN**
_____

**18 U.S.C. § 1349**
**18 U.S.C. § 1347**
**18 U.S.C. § 371**
**42 U.S.C. § 1320a-7b(b)(2)(A)**
**18 U.S.C. § 1343**
**18 U.S.C. § 2**
**18 U.S.C. § 982**

**UNITED STATES OF AMERICA**

**v.**

**JASON EDWARD LOPEZ,**

**Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.  The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

**<u>Durable Medical Equipment</u>**

4.      Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, ankle braces, and wrist braces (collectively, "braces").

5.      DME companies, physicians, and other health care providers that provided services to beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6.     CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, a financial interest, or managing control of a DME supplier. This included: (i) all individuals and organizations with five percent or more of an ownership stake, either direct or indirect, in the DME supplier; (ii) all individuals or organizations with a partnership interest in the DME supplier, regardless of the percentage of ownership; (iii) all organizations with "managing control" over the DME supplier; and (iv) all "managing employees."

7.     CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

8.     CMS Form 855S also required the disclosure of "Adverse Legal Actions" against individuals or organizations with an ownership interest, partnership interest, or managing control of a DME supplier. CMS Form 855S defined "Adverse Legal Actions" as, among other things, any federal or state felony conviction within the previous ten years, and any felony or misdemeanor conviction, under federal or state law, relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

9.     This disclosure obligation was necessary, in part, because, under 42 C.F.R. § 424.530, CMS could deny a provider's enrollment in the Medicare program if, among other reasons, the "provider, supplier, or any owner or managing employee of the provider or supplier was, within the preceding 10 years, convicted . . . of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries."

10.     If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."  A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

11.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.  To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

12.     Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries.  To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically via interstate wire communication, either directly or through a billing company.

13.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

14.     A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical professional.

### Economic Injury Disaster Relief Program

### The Small Business Administration

15.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small

businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

16. As part of this effort, the SBA facilitated loans through banks, credit unions, and other lenders. The federal government backed these loans.

### The Economic Injury Disaster Loan Program

17. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

18. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

19. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was further required to

"review and check all of the following" statements, which included a statement that the "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)." If the applicant was "unable to check all of the" certifications, the "Applicant [was] not an Eligible Entity." The applicant was further required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

20.     EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

**The Defendant and Related Entities and Individuals**

21.     JC Medical Equipment LLC ("JC Medical") was a limited liability company formed under the laws of Florida, with a principal place of business in Martin County, Florida, that maintained a bank account at Wells Fargo Bank ending in 8733 (the "JC Medical Account"). JC Medical purportedly provided DME to individuals, including Medicare beneficiaries.

22.     Anointed Medical Supplies, LLC ("Anointed") was a limited liability company formed under the laws of Florida, with a principal place of business in Martin County, Florida, that maintained a bank account at Wells Fargo Bank ending in 9394 (the "Anointed Account"). Anointed purportedly provided DME to individuals, including Medicare beneficiaries.

23.     RX Licensing & Accreditations, LLC ("RX Licensing") was a Florida company with its principal place of business in Palm Beach County, Florida.

24.     Defendant **JASON EDWARD LOPEZ** was a resident of St. Lucie County, Florida, who co-owned and operated JC Medical and Anointed.

25.     Christine Pawlak was a resident of Palm Beach County, Florida, who owned and operated RX Licensing and co-owned and operated JC Medical.  In addition, Christine Pawlak, through her consulting company RX Licensing, established DME companies, helped enroll DME companies in Medicare as DME providers, and provided purported consulting services to DME providers, including JC Medical and Anointed.

26.     Frank Bianco was a resident of Martin County, Florida, who co-owned and operated Anointed.

27.     Individual 1 was a resident of St. Lucie County, Florida.

28.     Company A was a company incorporated under the laws of Florida, with its principal place of business in Palm Beach County, Florida.

29.     Leverage Management Solutions, LLC ("Leverage") was a company incorporated under the laws of Florida, with is principal place of business in Palm Beach County, Florida.

### COUNT 1
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.      Paragraphs 1 through 14 and 21 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2019, and continuing through in or around October 2020, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JASON EDWARD LOPEZ,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Christine Pawlak, Frank Bianco, and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.     to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### **Purpose of the Conspiracy**

3.     It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) establishing DME companies, including JC Medical and Anointed, and enrolling those DME companies in Medicare in the names of only certain of the owners to conceal the identities of the other owners who had prior felony convictions; (b) offering and paying kickbacks and bribes to marketers, including Leverage and Company A, in exchange for doctors' orders for DME prescribed to Medicare beneficiaries, and other

documentation necessary to submit claims to Medicare (collectively, "doctors' orders"), without regard to the medical necessity for the prescribed DME or whether the DME was eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare through JC Medical and Anointed for DME that was not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     **JASON EDWARD LOPEZ** agreed with Christine Pawlak that **LOPEZ** would, with the help of Pawlak and RX Licensing, establish JC Medical as a DME provider. **LOPEZ** and Pawlak co-owned JC Medical but registered the entity with the State of Florida as solely owned by **LOPEZ**. **LOPEZ** and Pawlak did so to conceal Pawlak's ownership interest in JC Medical from Medicare because Pawlak had been convicted of a federal felony within the ten years prior to JC Medical's enrollment in the Medicare program as a DME provider.

5.     **JASON EDWARD LOPEZ** and Christine Pawlak further agreed to and did jointly own and operate JC Medical for the purpose of submitting false and fraudulent claims to Medicare for DME that was procured through kickbacks, was not medically necessary, and was otherwise ineligible for reimbursement by Medicare.

6.     **JASON EDWARD LOPEZ** signed and caused to be submitted to Medicare, through Christine Pawlak and RX Licensing, a CMS Form 855S on behalf of JC Medical, falsely

certifying that **LOPEZ** and JC Medical would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute, the requirement to not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare, and the requirement to not submit claims with deliberate ignorance or reckless disregard of their truth or falsity. The CMS Form 855S also falsely represented that **LOPEZ** was the sole owner and managing employee of JC Medical, again concealing from Medicare Pawlak's ownership interest in the entity.

7.      **JASON EDWARD LOPEZ** and Christine Pawlak, through JC Medical, offered and paid kickbacks and bribes to marketers, including Leverage and Company A, in exchange for signed doctors' orders for DME prescribed to Medicare beneficiaries, without regard to whether the DME was medically necessary or eligible for reimbursement by Medicare.

8.      **JASON EDWARD LOPEZ** and Christine Pawlak, through JC Medical, then submitted false and fraudulent claims to Medicare, via interstate wire communication, for DME that was procured through kickbacks and bribes, not medically necessary, and was otherwise not eligible for reimbursement by Medicare.

9.      **JASON EDWARD LOPEZ** agreed with Christine Pawlak and Frank Bianco that **LOPEZ** would, with the help of Pawlak and RX Licensing, establish Anointed as a DME provider. **LOPEZ** and Bianco co-owned Anointed but registered the entity with the State of Florida as owned by **LOPEZ** and Individual 1. **LOPEZ**, Pawlak, and Bianco did so to conceal Bianco's ownership interest in Anointed from Medicare because Bianco had been convicted of a state felony within the ten years prior to Anointed's enrollment in the Medicare program as a DME provider.

10.      **JASON EDWARD LOPEZ** and Frank Bianco further agreed to and did jointly own and operate Anointed for the purpose of submitting false and fraudulent claims to Medicare

for DME that was procured through kickbacks, was not medically necessary, and was otherwise ineligible for reimbursement by Medicare.

11.     **JASON EDWARD LOPEZ** signed and caused to be submitted to Medicare, through Christine Pawlak and RX Licensing, a CMS Form 855S on behalf of Anointed, falsely certifying that **LOPEZ** and Anointed would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute, the requirement to not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare, and the requirement to not submit claims with deliberate ignorance or reckless disregard of their truth or falsity. The CMS Form 855S also falsely represented that **LOPEZ** and Individual 1 were the sole owners and managing employees of Anointed, again concealing from Medicare Bianco's ownership interest in the entity.

12.     **JASON EDWARD LOPEZ**, Christine Pawlak, and Frank Bianco, through Anointed, offered and paid kickbacks and bribes to marketers, including Leverage and Company A, in exchange for signed doctors' orders for DME prescribed to Medicare beneficiaries, without regard to whether the DME was medically necessary or eligible for reimbursement by Medicare.

13.     **JASON EDWARD LOPEZ**, Christine Pawlak, and Frank Bianco, through Anointed, then submitted false and fraudulent claims to Medicare, via interstate wire communication, for DME, that was procured through kickbacks and bribes, not medically necessary, and was otherwise not eligible for reimbursement by Medicare.

14.     In total, from in or around January 2019, and continuing through in or around October 2020, **JASON EDWARD LOPEZ**, Christine Pawlak, Frank Bianco, and others caused JC Medical and Anointed to submit false and fraudulent claims to Medicare, via interstate wire communication, in the approximate amount of at least $2,598,318, of which approximately

$903,937 was paid, for DME that was procured through the payment of kickbacks and bribes, was not medically necessary, or was otherwise not eligible for reimbursement by Medicare.

15.     **JASON EDWARD LOPEZ**, Christine Pawlak, Frank Bianco, and their co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### Health Care Fraud
### (18 U.S.C. § 1347)

1.     Paragraphs 1 through 14 and 21 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2019, and continuing through in or around October 2020, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JASON EDWARD LOPEZ,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

### Purpose of the Scheme and Artifice

3.     It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and

12

bribes to marketers, including Leverage and Company A, in exchange for doctors' orders for DME prescribed to Medicare beneficiaries, without regard to the medical necessity for the prescribed DME or whether the DME was eligible for Medicare reimbursement; (b) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare through JC Medical and Anointed for DME that was not medically necessary and not eligible for Medicare reimbursement; (c) concealing and causing the concealment of false and fraudulent claims to Medicare; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### The Scheme and Artifice

4.      The Manner and Means of the Conspiracy section of Count 1 of this indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.      On or about the dates set forth as to each count below, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JASON EDWARD LOPEZ,**

did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program in that the defendant submitted and caused the submission of false and fraudulent claims to Medicare, seeking the identified dollar amounts, and representing that such benefits, items, and services were medically necessary, eligible for Medicare reimbursement, and provided to beneficiaries as claimed:

| Count | Medicare Beneficiary | Billing Entity | Approx. Date of Claim Submission | Product Codes; Claim No. | Total Approx. Amount Billed |
|-------|----------------------|----------------|----------------------------------|--------------------------|------------------------------|
| 2 | K.R. | JC Medical | 7/19/2019 | L3960 & L3916; 119200800581001 | $1,520 |
| 3 | C.Y. | JC Medical | 7/23/2019 | L3960 & L3916; 119204800378001 | $1,520 |
| 4 | P.R. | JC Medical | 12/31/2019 | L0650, L1833, & L2397; 119365700195000 | $3,500 |
| 5 | L.W. | Anointed | 8/25/2020 | L0650, L1851, & L2397; 120238801078000 | $4,100 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
### Conspiracy to Defraud the United States and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 14 and 21 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2019, and continuing through in or around October 2020, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JASON EDWARD LOPEZ,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Christine Pawlak, Frank Bianco, and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

14

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS in their administration and oversight of Medicare; and

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) establishing DME companies, including JC Medical and Anointed, and enrolling those DME companies in Medicare in the names of only certain of the owners to conceal the identities of other owners of those DME companies who had prior felony convictions; (b) offering and paying kickbacks and bribes to marketers, including Leverage and Company A, in exchange for doctors' orders for DME prescribed to Medicare beneficiaries; (c) submitting and causing the submission of claims to Medicare through JC Medical and Anointed for DME using doctors' orders that were procured through the payment of kickbacks and bribes; (d) concealing and causing the concealment from Medicare of the payment of kickbacks and bribes related to claims submitted to Medicare; and (e) diverting proceeds of the conspiracy for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4. **JASON EDWARD LOPEZ** agreed with Christine Pawlak that **LOPEZ** would, with the help of Pawlak and RX Licensing, establish JC Medical as a DME provider. **LOPEZ** and Pawlak co-owned JC Medical but registered the entity with the State of Florida as solely owned by **LOPEZ**. **LOPEZ** and Pawlak did so to conceal Pawlak's ownership interest in JC Medical from Medicare because Pawlak had been convicted of a federal felony within the ten years prior to JC Medical's enrollment in the Medicare program as a DME provider.

5. **JASON EDWARD LOPEZ** and Christine Pawlak further agreed to and did jointly own and operate JC Medical for the purpose of submitting claims to Medicare for DME that was procured through kickbacks and bribes.

6. **JASON EDWARD LOPEZ** signed and caused to be submitted to Medicare, through Christine Pawlak and RX Licensing, a CMS Form 855S on behalf of JC Medical, falsely certifying that **LOPEZ** and JC Medical would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute. The CMS Form 855S also falsely represented that **LOPEZ** was the sole owner and managing employee of JC Medical, again concealing from Medicare Pawlak's ownership interest in the entity.

7. **JASON EDWARD LOPEZ** and Christine Pawlak, through JC Medical, offered and paid kickbacks and bribes to marketers, including Leverage and Company A, in exchange for signed doctors' orders for DME prescribed to Medicare beneficiaries.

8. **JASON EDWARD LOPEZ** and Christine Pawlak, through JC Medical, then submitted claims to Medicare for DME, that was procured through kickbacks and bribes.

9.      **JASON EDWARD LOPEZ** agreed with Christine Pawlak and Frank Bianco that **LOPEZ** would, with the help of Pawlak and RX Licensing, establish Anointed as a DME provider. **LOPEZ** and Bianco co-owned Anointed but registered the entity with the State of Florida as owned by **LOPEZ** and Individual 1.  **LOPEZ**, Pawlak, and Bianco did so to conceal Bianco's ownership interest in Anointed from Medicare because Bianco had been convicted of a state felony within the ten years prior to Anointed's enrollment in the Medicare program as a DME provider.

10.      **JASON EDWARD LOPEZ** and Frank Bianco further agreed to and did jointly own and operate Anointed for the purpose of submitting claims to Medicare for DME that was procured through kickbacks.

11.      **JASON EDWARD LOPEZ** signed and caused to be submitted to Medicare, through Christine Pawlak and RX Licensing, a CMS Form 855S on behalf of Anointed, falsely certifying that **LOPEZ** and Anointed would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute.  The CMS Form 855S also falsely represented that **LOPEZ** and Individual 1 were the sole owners and managing employees of Anointed, again concealing from Medicare Bianco's ownership interest in the entity.

12.      **JASON EDWARD LOPEZ**, Christine Pawlak, and Frank Bianco, through Anointed, offered and paid kickbacks and bribes to marketers, including Leverage and Company A, in exchange for signed doctors' orders for DME prescribed to Medicare beneficiaries.

13.      **JASON EDWARD LOPEZ**, Christine Pawlak, and Frank Bianco, through Anointed, then submitted claims to Medicare for DME that was procured through kickbacks and bribes.

14.      In total, from in or around January 2019, and continuing through in or around October 2020, **JASON EDWARD LOPEZ**, Christine Pawlak, Frank Bianco, and others caused

JC Medical and Anointed to submit claims to Medicare in the approximate amount of at least $2,598,318, of which approximately $903,937 was paid, for DME that was procured through the payment of kickbacks and bribes.

15.     **JASON EDWARD LOPEZ**, Christine Pawlak, Frank Bianco, and their co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the fraud.

<u>**Overt Acts**</u>

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one coconspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about March 5, 2019, **JASON EDWARD LOPEZ** and Christine Pawlak caused the submission, via UPS, of a Form 855S on behalf of JC Medical, falsely certifying that **LOPEZ** and JC Medical would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute.

2.      On or about August 2, 2019, **JASON EDWARD LOPEZ** wired Company A approximately $4,000 from the JC Medical Account as a kickback for the referral of Medicare beneficiaries.

3.      On or about December 5, 2019, **JASON EDWARD LOPEZ** wired Leverage approximately $4,970 from the JC Medical Account as a kickback for the referral of Medicare beneficiaries.

4.      On or about December 13, 2019, **JASON EDWARD LOPEZ** and Christine Pawlak caused the submission, via Federal Express, of a Form 855S on behalf of Anointed, falsely

certifying that **LOPEZ** and Anointed would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute.

5.        On or about September 1, 2020, **JASON EDWARD LOPEZ** wired Company A $11,175 from the Anointed Account as a kickback for the referral of Medicare beneficiaries.

All in violation of Title 18, United States Code, Section 371.

<u>**COUNTS 7-9**</u>
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.        Paragraphs 1 through 14 and 21 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.        On or about the dates enumerated below, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JASON EDWARDS LOPEZ**,

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, to a person, to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|-------|----------------------------------|----------------------------------|--------------------------------|
| 7 | 8/2/2019 | $4,000 | Wire Transfer from the JC Medical Account to Company A |
| 8 | 12/5/2019 | $4,970 | Wire transfer from the JC Medical Account to Leverage |
| 9 | 9/1/2020 | $11,175 | Wire Transfer from the Anointed Account to Company A |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNT 10
### Wire Fraud
### (18 U.S.C. § 1343)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2.      From in or around June 2020, and continuing through in or around October 2020, in St. Lucie County, in the Southern District of Florida, and elsewhere, the defendant,

### JASON EDWARD LOPEZ

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for the defendant to unlawfully enrich himself by: (a) submitting and causing the submission, via interstate wire communication, of a false and fraudulent EIDL application made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; (b) concealing and causing the concealment of the false and fraudulent application; and (c) diverting fraud proceeds for his personal use, the use and benefit of others, and to further the fraud.

**The Scheme and Artifice**

4.     On or about June 26, 2020, **JASON EDWARD LOPEZ** submitted, and caused the submission of, an EIDL application in the name of JC Medical seeking an EIDL for approximately $105,800 (the "JC Medical EIDL Application").  In the JC Medical EIDL Application, **LOPEZ** falsely represented, among other things, that JC Medical was "not engaged in any illegal activity" and that JC Medical had seven employees as of January 31, 2020.

5.     **JASON EDWARD LOPEZ** certified in the JC Medical EIDL Application that the information provided was "true and correct" and subject to the penalty of perjury under laws of the United States.

6.     On or about June 29, 2020, in reliance on the false and fraudulent representations made in the JC Medical EIDL Application, the SBA deposited $7,000 in the form of an EIDL advance into the JC Medical Account.

7.     From in or around June 2020, and continuing through in or around October 2020, **JASON EDWARD LOPEZ** contacted the SBA several times to inquire about the status of the JC Medical EIDL Application.

**Use of Wires**

8.     On or about June 26, 2020, in St. Lucie County, in the Southern District of Florida, and elsewhere, the defendant, **JASON EDWARD LOPEZ,** for the purpose of executing and in furtherance of the aforementioned scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, that is, the electronic transmission from **JASON EDWARD LOPEZ**, within the Southern District of Florida, to the SBA, through servers

outside of Florida, of the JC Medical EIDL Application, in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982)

1.  The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of certain property in which the defendant has an interest.

2.  Upon conviction of a violation of, or a criminal conspiracy to violate, a "Federal health care offense," as defined in Title 18, United States Code, Section 24(a), as alleged in Counts 1 through 9, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to such violation.

3.  Upon a conviction of a violation of Title 18, United States Code, Section 1343, as alleged in Counts 10 and 11 of this Indictment, the defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting or derived from, proceeds obtained directly or indirectly, as the result of such violation.

4.  The property, which is subject to criminal forfeiture includes, but is not limited to, the following:

(a)  All principal, deposits, interest, dividends, and any other amounts credited to account number 000009969728733 held at Wells Fargo, in the name of JC Medical for the benefit of **JASON EDWARD LOPEZ**;

(b)    All principal, deposits, interest, dividends, and any other amounts credited to account number 000003226989394 held at Wells Fargo, in the name of **JASON EDWARD LOPEZ**.

All pursuant to Title 18, United States Code, Sections 982(a)(2)(A), and 982(a)(7), and the procedures outlined at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____

FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
REGINALD CUYLER JR.
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

**v.**

JASON EDWARD LOPEZ,

_____/

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division** (select one)

☐ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☑ WPB

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No
    List language and/or dialect:

4.  This case will take   10   days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)
    I     ☐ 0 to  5 days                       ☐ Petty
    II    ☑ 6 to 10 days                       ☐ Minor
    III   ☐ 11 to 20 days                      ☐ Misdemeanor
    IV    ☐ 21 to 60 days                      ☐ Felony
    V     ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge                              Case No.

7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Magistrate Case No.

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
    If yes, Judge Cannon                       Case No. 21-80134

9.  Defendant(s) in federal custody as of

10. Defendant(s) in state custody as of

11. Rule 20 from the                District of

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____

Reginald Cuyler, Jr.
DOJ Trial Attorney
Court ID No.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**       **JASON EDWARD LOPEZ**

**Case No:**

Count #:   1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:**   Twenty (20) years' imprisonment, three (3) years supervised release, fine of $250,000 or twice the gross gain or loss from the offense, restitution, and criminal forfeiture.

Counts #:   2 – 5

Title 18, United States Code, Section 1347

Health Care Fraud

**\*Max Penalty:**    Ten (10) years' imprisonment as to each count, three (3) years supervised release, fine of $250,000 or twice the gross gain or loss from the offense, restitution, and criminal forfeiture.

Count #:   6

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

\*Max Penalty:    Five (5) years' imprisonment, three (3) years supervised release, fine of $250,000 or twice the gross gain or loss from the offense, restitution, and criminal forfeiture.

Counts #:   7 – 9

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:    Ten (10) years' imprisonment as to each count, three (3) years supervised release, fine of $250,000 or twice the gross gain or loss from the offense, restitution, and criminal forfeiture.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **JASON EDWARD LOPEZ**

**Case No:** _____

Count : #:   10

_____ Title 18, United States Code, Section 1343 _____

_____ Wire Fraud _____

**\*Max Penalty:**   Twenty (20) years' imprisonment, three (3) years supervised release, fine of $250,000 or twice the gross gain or loss from the offense, restitution, and criminal forfeiture.